UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CANDIE YER HERR and ERIC
ZOOVES HERR,

                  Appellants,

v.

HELEN M. LUDWIG and DILLON
AMBROSE,

                  Appellees.

Case No. 25-CV-1880-JPS

**ORDER**

---

1.  **INTRODUCTION**

Debtor-Appellants Candie Yer Herr and Eric Zooves Herr ("Appellants"), acting pro se, move for leave to appeal an interlocutory order of United States Bankruptcy Judge Rachel M. Blise ("Judge Blise") in their bankruptcy action, *In re Candie Yer Herr and Eric Zooves Herr*, No. 25-22893-rmb (Bankr. E.D. Wis. May 20, 2025) (hereinafter "Bankruptcy Action"). ECF No. 1. Appellee Helen M. Ludwig ("Ludwig") opposes the motion. ECF No. 5. Appellee Dillon Ambrose, the U.S. Trustee, did not respond. Appellants filed a further submission that the Court will construe as a reply brief. ECF No. 7.[1] For the reasons stated below, the Court will deny the motion and dismiss this appeal.

---

[1] Appellants were permitted to file a reply brief, which the Court specified could not exceed five double-spaced pages. ECF No. 2 at 5. Instead, Appellants filed a brief by the specified deadline, which spans ten double-spaced pages and which they style as a "[b]rief on [their] motion to [a]ppeal [i]nterlocutory [o]rders of [the b]ankrupcty [c]ourt." ECF No. 7. Appellants already filed a brief in support of their original motion, and the new brief seeks additional forms of relief than those sought in the original brief. *Compare* ECF No. 1 *with* ECF No. 7. To the extent

## 2. BACKGROUND

In May 2025, Appellants filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Bankruptcy Action, ECF No. 1. Chapter 7 "provides for 'liquidation' – the sale of nonexempt property and the distribution of the proceeds to [the debtor's] creditors." *Chapter 7 – Bankruptcy Basics*, U.S. COURTS, https://www.uscourts.gov/court-programs/bankruptcy/bankruptcy-basics/chapter-7-bankruptcy-basics [perma.cc/778S-DFXR] (last visited Dec. 31, 2025).

In a Chapter 7 proceeding, the debtor may seek to "protect some property from the claims of creditors because it is exempt under federal bankruptcy law or under the laws of the debtor's home state," but otherwise "the bankruptcy trustee gathers and sells the debtor's nonexempt assets and uses the proceeds of such assets to pay . . . creditors[.]" *Id.*; *see also* 11 U.S.C. § 704(a)(1) (tasking trustee with "collect[ing] and reduc[ing] to money the property of the [bankruptcy] estate").

Ludwig was appointed as trustee to administer Appellants' bankruptcy estate. Bankruptcy Action, ECF No. 4. Appellants attempted to assert that certain of their property was exempt from liquidation and distribution to their creditors. *Id.*, ECF No. 61. "Consistent with [her] statutory charge" to administer Appellants' bankruptcy estate, Ludwig objected to some of Appellants' claimed exemptions and moved for turnover of that property and "other specific non-exempt property." ECF No. 5 at 1; Bankruptcy Action, ECF No. 89. Specifically, Ludwig objected to application of (1) any exemption greater than $150,000 in Appellants' home

---

this filing can be considered a reply brief, it exceeds the length specified by the Court. As explained below, the Court considers this submission for the sake of complete analysis.

and (2) any exemption greater than $10,000 in Appellants' depository accounts, the balance of which totaled $12,097.54 at the time the Chapter 7 petition was filed. Bankruptcy Action, ECF No. 89 at 2. Ludwig later amended her objection to further argue that Appellants should not be allowed to claim any exemption for equity in their home because they had transferred the home into an irrevocable trust. *Id.*, ECF No. 94. Ludwig also noted that Appellants previously disclosed interests in a brokerage account valued at $10,304.46 and in cryptocurrency and foreign currency valued at $22,500, but did not claim these assets as exempt, and moved for turnover of these assets as well. *Id.*, ECF No. 89 at 3 (citing *id.*, ECF No. 41).

At a preliminary hearing on November 19, 2025 and in the order entered thereafter, Judge Blise discussed Ludwig's various objections and requests, and continued the hearing to December 16, 2025. *Id.*, ECF Nos. 123 and 124. She sustained Ludwig's objection as to the depository accounts and ordered Appellants to turn over to Ludwig $2,097.54 from their depository accounts (the difference between the balance of the accounts and the permissible exemption) or to "explain to the [Bankruptcy] Court at the adjourned hearing how and when they propose to turn over the nonexempt funds to [Ludwig]." *Id.*, ECF No. 124 at 3.

Judge Blise further granted Ludwig's motion for turnover of the balance of Appellants' brokerage account and ordered them to turn over that balance ($10,304.46) to Ludwig. *Id.* She additionally granted Ludwig's motion for turnover of Appellants' cryptocurrency and foreign currency and prohibited them from "trading, liquidating, transferring, or converting any cryptocurrency or foreign currency in their possession pending further order of the Court." *Id.* Finding that the exact value of the cryptocurrency

was disputed, Judge Blise ordered Appellants to submit further documentation related to its value. *Id.*

Judge Blise noted that Appellants "acknowledged that they did not claim exemptions" in the brokerage account, the cryptocurrency, or the foreign currency. *Id.* at 2. She rejected Appellants' attempt to "tender their certificates of naturalization" in lieu of turning over these non-exempt assets, as well as their argument that their certificates of naturalization "can be liquidated to pay their debts," explaining that "the debtors' certificates of naturalization have no value." *Id.*

Appellants filed this appeal on November 26, 2025, seeking leave to appeal Judge Blise's above-discussed order and to "[s]tay the requirements of [the] order pending the outcome of this appeal." ECF No. 1 at 3. In their motion for leave to appeal, they seem to take issue specifically with (1) Judge Blise's refusal to permit them to tender their certificates of naturalization to satisfy the orders to turn over the brokerage account, cryptocurrency, and foreign currency and (2) her requirement that they file documentation related to their cryptocurrency and/or foreign currency. *See id.* at 2.[2]

Judge Blise took up Ludwig's objections and turnover requests again at the December 16, 2025 hearing, and subsequently issued orders directing next steps for Appellants. Bankruptcy Action, ECF Nos. 140–142. Specifically, she ordered that, by January 15, 2026, Appellants turn over to Ludwig the $2,097.54 in their depository accounts exceeding the statutory

---

[2] Appellants moved both Judge Blise and this Court on an emergency basis to postpone the December 16, 2025 hearing and stay their Chapter 7 case pending this appeal. Both motions were denied. ECF No. 4; Bankruptcy Action, ECF No. 132.

exemption amount, the funds in their brokerage account, their foreign currency, and their cryptocurrency held in Uphold and Coinbase accounts, because none of these assets was exempt. *Id.*, ECF No. 141 at 1–2. She authorized Trustee to control and liquidate the Uphold and Coinbase accounts. *Id.*, ECF No. 142. She held in abeyance the issue of whether Appellants' residential property is subject to any exemption. *Id.*, ECF No. 141 at 2. She later denied Appellants' motion to reconsider these orders. *Id.*, ECF No. 152.

Appellants' latest filing—which, as noted *supra* note 1, purports to be a second brief-in-chief in support of their motion for leave to appeal— seeks more relief than Plaintiffs' original brief. *Compare* ECF No. 1 at 3 *with* ECF No. 7 at 8–9. They now seek, in addition to their original requests:

- That the Court order Judge Blise and Ludwig "to [r]eview and examine fraudulent state court judgments for debtors' property and funds that were seized"; and
- That the Court rule that their residence is exempt from their bankruptcy estate (a matter which Judge Blise has not yet ruled on).

ECF No. 7 at 8–9.

### 3. LEGAL STANDARD

A district court may choose to hear an interlocutory appeal of a bankruptcy court's order. 28 U.S.C. § 158(a)(3). "[N]either the Bankruptcy Code nor the Rules provide any guidance for determining the appropriateness of an interlocutory appeal." *In re Bowers-Siemon Chemicals Co.*, 123 B.R. 821, 824 (N.D. Ill. 1991). "Courts have thus relied upon the standards of 28 U.S.C. § 1292(b), the statute governing interlocutory appeals from district courts to courts of appeals," to determine whether an interlocutory appeal is appropriate. *Id.* (collecting cases). Interlocutory

appeals are authorized when the order that the appellants seek to challenge "involves a controlling question of law as to which there is substantial ground for difference of opinion," the resolution of which "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

4.  **ANALYSIS**

None of the issues Appellants raise or the forms of relief that they seek provides a valid basis for this Court to hear their interlocutory appeal. Accordingly, their motion for leave to appeal will be denied.

They first assert that an interlocutory appeal is warranted because the issue of whether their certificates of naturalization can be deposited with Ludwig for inclusion in the bankruptcy estate—in lieu of turning over the actual assets that Judge Blise has ordered them to turn over—is a controlling issue of law on which there is substantial ground for a difference of opinion. ECF No. 1 at 2; ECF No. 7 at 6–7. Judge Blise already rejected this argument because "the debtors' certificates of naturalization have no value." Bankruptcy Action, ECF No. 124 at 2. She further explained:

> The debtors appear to rely on what has been characterized as the "redemption theory" . . . . This theory is a "sovereign citizen-type view which . . . holds that the federal government went bankrupt when it abandoned the gold standard in 1933 and began converting the physical bodies of its citizens into assets against which it could sell bonds." *See United States v. Anzaldi*, 800 F.3d 872, 875 (7th Cir. 2015). According to the theory, "when the United States Government pledged the strawman of its citizens as collateral for the country's national debt, it created an 'exemption account' for each citizen, identified by each person's Social Security number. When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 209–11 (D. Conn. 2010).

> The redemption theory has been "universally and emphatically rejected by numerous federal courts." *Id.* at 214; *see also In re Hill*, No. 1:14-BK-15544-SDR, 2015 WL 5575499, at *3 (Bankr. E.D. Tenn. 2015) . . . . This Court, too, rejects the debtors' theory as frivolous.

*Id.*, ECF No. 132 at 3–4.

This Court wholeheartedly agrees with Judge Blise's analysis. In their original brief, Appellants cite absolutely no law supporting the proposition that their certificates of naturalization have any value. ECF No. 1 at 2. That is likely because, as Judge Blise noted, federal courts have roundly rejected their theory. Where Appellants' theory has no basis in the law, the Court cannot conclude there is "substantial ground for difference of opinion" on the topic. 28 U.S.C. § 1292(b).

In their second submission, Appellants assert that Ludwig has a duty to "research and evaluate" or "appraise" the value of "[g]overnment [c]ertificates."[3] ECF No. 7 at 6–7. However, the Court sees no merit in this argument either, because irrespective of any appraisal duty that Ludwig might have, she could not appraise Appellants' certificates of naturalization as having any value because, as Judge Blise recognized, the law does not recognize these documents as assets in this context.

For both of these reasons, the Court sees no reason to permit an interlocutory appeal on the issue of whether their certificates of naturalization can be deposited with Ludwig for inclusion in the bankruptcy estate.

---

[3] Appellants also reference "U.S. Treasury certificates and bonds." ECF No. 7 at 6. They have not previously referenced bonds in this appeal, and the Court sees no such discussion in any of Judge Blise's prior orders. The Court will discuss only Appellants' argument related to their government-issued certificates of naturalization.

Appellants next argue that Judge Blise's requirement that they "file extensive financial documentation" and refrain from "trading or liquidating cryptocurrency . . . raises controlling questions of law concerning the scope of a debtor's duties, the limits of the court's power to issue such injunctions, and potential violations of [their] Fifth Amendment rights." ECF No. 1 at 2. They also assert that "courts are split on the extent to which bankruptcy courts can compel production of records that may implicate a debtor's constitutional rights, particularly with assets like cryptocurrency where tracing and documentation can be complex." *Id.*

There is no room for differences of opinion on Judge Blise's requirement that Appellants submit documentation related to their cryptocurrency accounts, or her temporary prohibition on Appellants trading or liquidating this asset. Judge Blise noted that Appellants did not argue that this asset is exempt from the bankruptcy estate, and determined that it is in indeed the non-exempt property of the state. Pursuant to that finding, Judge Blise "issue[d] . . . order[s] . . . that [she deemed] necessary or appropriate to carry out the provisions" of the Bankruptcy Code, including Appellants' duties to "cooperate with the trustee as necessary to enable the trustee to perform [her] duties" and "surrender to the trustee all property of the estate and any recorded information . . . relating to property of the estate." 11 U.S.C. § 105(a); 11 U.S.C. § 521(a)(3) and (4). Appellants do not offer and the Court has not located any authority suggesting that Judge Blise's actions were contrary to law or unconstitutional in any way. This argument does not provide a basis for interlocutory appeal. *See* 28 U.S.C. § 1292(b).

The additional arguments and forms of relief Appellants seek in their second submission to the Court are likely not properly before the

Court because Appellants did not include them in their original motion. *See* Fed. R. Bankr. P. 8004(b)(1) (requiring the motion for leave to appeal to include "the relief sought" and "the reasons why leave to appeal should be granted"). The Court is not inclined to permit piecemeal amendment of motions. For the sake of completeness, the Court briefly addresses these requests. First, Appellants' request that the Court rule that their residence is exempt from their bankruptcy estate, ECF No. 7 at 8, is extremely premature. Judge Blise has held this matter in abeyance so there is no finding for this Court to review. Second, their request to order Judge Blise and Ludwig "to [r]eview and examine fraudulent state court judgments for debtors' property and funds that were seized," *id.*, would run contrary to Judge Blise's authority, as explained above, to direct the Chapter 7 proceeding as she sees fit in accordance with the Bankruptcy Code.

For all the reasons stated above, the Court will deny the motion for leave to file an interlocutory appeal and dismiss this case.

Accordingly,

**IT IS ORDERED** that Debtor-Appellants Candie Yer Herr and Eric Zooves Herr's motion for leave to appeal, ECF No. 1, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this appeal be and the same is hereby **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of January, 2026.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* FED. R. APP. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* FED. R. APP. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to rehear the matter. FED. R. BANKR. P. 8022. Such a motion must be filed within **fourteen (14)** days of the entry of judgment. The Court may extend this deadline upon a party's motion to do so. FED. R. BANKR. P. 8022(a)(1). A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.